STACK *v.* OLMSTED.

127 359
f150 ¹315

1. Conditional Sale—Acceptance of Mortgage—Waiver of Title.

 One.who advances money to purchase property for the use of another, under an agreement that the property shall belong to him until paid for, does not, by accepting a mortgage on the same property, necessarily waive his title thereto, so as to subject the property to levy by an execution creditor of the mortgagor.

2. Execution—Mortgaged Property—Replevin.

 Where the value of mortgaged chattels does not exceed the amount of the mortgage, a sheriff levying an execution thereon subject to the mortgage acquires no interest by the levy, and cannot defeat a replevin by the mortgagee.

Error to Delta; Stone, J. Submitted May 7, 1901. Decided July 2, 1901.

Replevin by John K. Stack and John Corcoran, co-partners as Stack & Corcoran, against Frederick M. Olmsted, sheriff of Delta county, for property seized on execution. From a judgment for plaintiffs, defendant brings error. Affirmed.

*F. D. Mead*, for appellant.

*John Cummiskey*, for appellees.

Hooker, J. The defendant is a sheriff, whose only claim to the possession of the property replevied from him is by virtue of a levy of an execution issued upon a judgment against the Masonville Hoop Company in favor of one of its creditors. The plaintiffs claim to own the property in question, except two old boilers, and to have a chattel mortgage upon them. Previous to the rendition of said judgment, the hoop company was indebted to the plaintiffs, and the findings of fact show that plaintiffs

made an arrangement to aid the hoop company by furnishing money upon condition that they should own and control the property, and apply the proceeds upon their claim.

The property in dispute may, for convenience, be divided into three classes: ( 1 ) Logs, hoops, etc.; ( 2 ) miscellaneous property, consisting of horses, wagons, machinery, etc.; ( 3 ) two old boilers. On February 28, 1898, the hoop company gave plaintiffs a chattel mortgage for $3,500 upon the first class, and this was duly filed. On the same day it made with plaintiffs the following agreement, viz.:

" Articles of agreement made and entered into by and between John S. Armstrong, Isaac L. Lanford, and Ray F. Armstrong, known as the Masonville Hoop Company, of Masonville, Mich., parties of the first part, and Stack & Corcoran and John Corcoran, of the city of Escanaba, Delta county, Mich., parties of the second part.

" *Whereas*, said parties of the first part have this day given a chattel mortgage on logs, hoops, etc., for $3,500, to said second parties, to secure the payment of notes, moneys, goods, etc., said first parties may owe said second parties, from time to time, to the amount of $3,500, or any portion of it. This agreement and said chattel mortgage to cover all hoops and logs on hand, and all logs said first parties may receive from time to time during their indebtedness to said second parties; also all logs, when manufactured into hoops, lumber, etc., to remain the property of said second parties as security. All shipments of hoops, lumber, etc., to be consigned to said second parties, and, when paid, to apply as payment on notes or account due said second parties, or placed to the credit of said first parties in the Bank of Escanaba, to be at the option of said second parties to credit as they may prefer. Should it be necessary for said second parties to sell or dispose of any hoops, logs, lumber, etc., to make payments when due, any expense in so doing to be paid by said first parties. Should said second parties decide to permit said first parties to ship any material in their own name, said proceeds to apply on their indebtedness to said second parties as soon as collected."

This was not filed. On July 28, 1898, it gave plaintiffs a chattel mortgage upon a portion of the second class, for

$634, and this was filed on August 28, 1898. Another mortgage, for $375, was given on other property belonging to the second class. Plaintiffs had a chattel mortgage for $1,500 upon the two boilers, the same being dated December 6, 1897, and duly filed. The court determined that all of the property included in classes 1 and 2 was purchased and paid for by plaintiffs upon an arrangement that it should remain their property until their claim against the hoop company should be fully paid. There was testimony that "all of this material that was replevied had been material that the plaintiffs had purchased, except the two boilers;" also "that the most of the logs had been taken from lands bought by the plaintiffs, the lands and everything bought in their name," etc. It was also determined that the two boilers were worth but $300, and that plaintiffs' lien upon them was $600, and that, therefore, the defendant had no interest in them under the execution.

We are of the opinion that there was evidence from which these facts might be found, and we must therefore consider them established. The defendant contends that there was no evidence that the logs were acquired under an agreement that they were to remain the property of the plaintiffs until paid for, but that they were to be manufactured under the written agreement that they were to remain the property of plaintiffs "as security." It is urged that they were mortgaged on the same day, which is inconsistent with the theory that the title remained in the plaintiffs, and consistent only with the theory that they were held as security for $3,500 and no more. As to the second class, it is said that the giving of mortgages upon the property is inconsistent with, and a waiver of, a claim of title. On the other hand, the plaintiffs claim that their title was not affected by taking these mortgages.

There seems to have been no misunderstanding upon this subject between plaintiffs and the Masonville Hoop Company, and the testimony indicates that the judgment creditor was informed of the situation of affairs. Ordinarily, the acceptance of a mortgage would create a strong presumption of ownership by the mortgagor, but we can-

not say that it is necessarily a waiver of title, if the parties understand that it is not such. The learned circuit judge appears to have so found, and, this being so, the property was not subject to levy.

Counsel for defendant asserts that the court erred in relation to the two boilers. They, with the other property, were mortgaged for $1,500. All of this property belonged to the hoop company, but, not being adapted to its wants, most of it was sold, and plaintiffs permitted the money realized to be used in the business, instead of being applied upon the mortgage. It is said that it was not shown that there was $600 due; but the mortgage was $1,500, and there is nothing to indicate payment, so far as we discover. We know of nothing to prevent plaintiffs from allowing the amounts received from the property to be used in the business.

The court found that the plaintiffs' interest in the two boilers was $600, and that they were worth but $300. Nevertheless defendant's counsel contends that he had a right to levy and sell subject to the mortgage, and that plaintiffs, therefore, wrongfully took the property from him, and must respond to the full value of the property, not exceeding defendant's claim. In the case of *Rosenfield* v. *Case*, 87 Mich. 301 (49 N. W. 630), it was held that, when the value of goods was not in excess of the mortgages, in case of a levy subject to them there would be nothing covered by the levy. Counsel says that this case is not governed by the rule there laid down, because that was a case of goods held by attachment, whereas this is an execution levy. We have not heard a satisfactory reason for applying that rule in an attachment case and denying its application in case of an execution. It seems to be based on the theory that there should be no levy unless there is an excess over existing liens subject to levy. We think that the learned circuit judge did not err in so holding.

It is unnecessary to discuss other questions. The judgment is affirmed.

The other Justices concurred.